UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEFAN TELES | CIVIL ACTION |
| VERSUS | NO:      06-11250 |
| LIBERTY MUTUAL FIRE INSURANCE CO., ET AL. | SECTION: "I" (4) |

ORDER

Before the Court are two motions to fix attorneys' fees, filed by the Defendants, Hallmark Capital Group, LLC d/b/a/ Paul Davis Restoration of Southwest Houston ("Hallmark") and Liberty Mutual Fire Insurance Co. ("Liberty Mutual").  First, on August 24, 2007, the Court granted a Motion to Compel Discovery and for Expenses (R. Doc. 30), filed by Hallmark against the Plaintiff, Stefan Teles ("Teles").  (R. Doc. 31.)  Second, on October 5, 2007, the Court granted Liberty Mutual's Motion to Compel (R. Doc. 43), filed by Liberty Mutual, also against Teles.  (R. Doc. 45).  Both of the Defendants sought the award of reasonable attorney's fees and costs associated with the motions.

After granting both of the motions to compel discovery as unopposed, the Court ordered the prevailing parties to file a motions to fix attorney's fees into the record.  Hallmark filed **Motion to Fix Attorney's Fees (R. Doc. 40)** and attached an affidavit and a redacted invoice for services rendered by Hallmark's counsel, Lee M. Peacocke ("Peacocke").  Similarly, Liberty Mutual filed **Liberty Mutual's Motion to Fix Attorney Fees (R. Doc. 47)** with an affidavit of its counsel,

Catherine F. Giarrusso ("Giarrusso") and a redacted invoice for the charges incurred in preparing the motion to compel. Teles did not file an opposition to either motion. Hallmark and Liberty Mutual's motions for fees will be considered collectively below.

First, Hallmark seeks the recovery of $837.00 in attorney's fees. According to the affidavit submitted by Peacocke, he expended 6.20 hours on Hallmark's motion at a rate of $135.00 an hour, for a resulting total of $837.00. Second, Liberty Mutual seeks $260.00 in attorney's fees for 2.0 hours of work at Giarrusso's rate of $180.00 an hour. Neither party provided documentation for any costs expended, therefore, the Court will not award costs in connection with the motions.

## I.    Standard of Review

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar is presumed to yield a reasonable fee. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] The court can make upward or downward adjustments to the lodestar figure if the *Johnson* factors warrant such modifications. *See Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993). However, the lodestar should be modified only in exceptional

---

[1]The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719.

cases. *Id.*

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

**III.   Analysis**

    **A.   Calculating a Reasonable Hourly Rate**

Attorney's fees must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. *See NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11. However, mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley*, 461 U.S. at 439 n. 15.

Rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight to be given to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988); *see also White v. Imperial*

*Adjustment Corp.*, No. 99-03804, 2005 WL 1578810, at *8 (E.D.La. Jun. 28, 2005) (recognizing that attorneys customarily charge their highest rates only for trial work, and lower rates should be charged for routine work requiring less extraordinary skill and experience).

Where "an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable." *La. Power and Light*, 50 F.3d at 328.

### 1. Hallmark's Requested Rate for Attorney Peacocke

First, Hallmark seeks recovery of attorney's fees for its attorney, Peacocke, at an hourly rate of $135.00. In support of the rate, the Plaintiff submits an affidavit of Peacocke, which indicates that Peacocke received his Juris Doctorate from the University of Mississippi, School of Law and has been a good standing member of the bar for twenty years. (R. Doc. 40-3, Ex. A.) Furthermore, he has been involved in discovery disputes before the United States District Court for the Eastern District of Louisiana during his twenty years of practice. (R. Doc. 40-3, Ex. A.)

Peacocke asserts that his hourly billing rate is $135.00 is commensurate with or below rates charged in similar cases by local attorneys with similar experience, skill, and reputation. (R. Doc. 40-3, Ex. A.) However, he provides no information regarding the rates actually billed and paid in similar lawsuits. Nevertheless, his rate of $135.00 an hour is uncontested by the Defendant and is within the range of prevailing market rates. *See Hallmark Capital Group, LLC v. 6320 Hayne Blvd, Inc.*, No. 06-01324, 2007 WL 4257069, at *2 (E.D. La. Nov. 30, 2007) (finding an hourly rate of $130.00 for Peacocke as *prima facie* reasonable); *see also Lytal Enterprises, Inc. v. Newfield Exploration Co.*, No. 06-00033, 2006 WL 3366128 at *6-7 (E.D. La. Nov. 17, 2006) (identifying

the range of attorney's fees awarded in cases before the Eastern District of Louisiana, and specifically awarding a rate of $175.00 an hour to a senior-level associate, who had graduated from law school seven years ago, for work on a motion to compel). Therefore, the rate sought is *prima facie* reasonable. See La. Power and Light, 50 F.3d at 328.

### 2. Liberty Mutual's Requested Rate for Attorney Giarrusso

Liberty Mutual similarly submits an affidavit in support of Giarrusso's rate, by Giarrusso. (R. Doc. 47-2, Ex. A.) According to the affidavit, Giarrusso earned a Juris Doctorate from Tulane Law School in 2002, where she graduated *summa cum laude*, was inducted into Order of the Coif at graduation, acted as an Articles Editor for the Tulane Law Review, and received multiple awards and scholarships. (R. Doc. 47-2, Ex. A.) Currently, she is an associate with Barrasso Usdin Kupperman Freeman & Sarver and primarily practices commercial litigation and litigates insurance matters, commercial contracts, and business torts. (R. Doc. 47-3, Ex. A.) She attests that her billing rate for the matter is $180.00 an hour. (R. Doc. 47-3, Ex. A.)

Similar to Peacocke, Giarrusso also does not provide information regarding the rates billed and paid in similar lawsuits. Furthermore, Giarrusso's rate appears on the high end for attorney with her levels of experience. See Tasch, Inc. v. Unified Staffing & Associates, Inc., No. 02-03531, 2003 WL 23109790 (E.D. La. Dec. 30, 2003) (awarding counsel with five to six years of legal experience fees at a rate of $150.00 an hour); *see also* White v. Imperial Adjustment Corp., No. 2005 WL 1578810, at *7-8 (E.D. La. Jun. 28, 2005) (noting that rates between $150.00 to $250.00 typical of the area). However, Teles does not contest Giarrusso's requested rate, and her rate is ultimately within the range of prevailing market rates. Therefore, Giarrusso's rate of $180.00 is also *prima facie* reasonable.

### B. Determining the Reasonable Hours Expended

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir.1997); *Walker*, 99 F.3d at 770. Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Id.* (citing *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir.1996)). Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987). Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Hensley*, 461 U.S. at 434. The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended. *Id.* Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642 (5th Cir. 2002).

### 1. Reasonableness of Hours Expended by Peacocke

The fee entries submitted by Peacocke for the legal services that he rendered in conjunction with the motion to compel do not mention any hours expended but not billed to his client. It is therefore presumed that Peacocke did not exercise billing judgment. However, as indicated by the above case law, the Court may also conduct a line-by-line analysis of the fee entries made by Peacocke for the work that he performed on Hallmark's motion. The underlying motion was opposed and ultimately entailed oral arguments before the Court.

Peacocke indicates that he spent a total of 6.20 hours on the motion to compel, which included drafting the motion to compel, drafting a reply memorandum to Teles's opposition, and

attending oral arguments on the motion. Specifically, Peacocke indicates that he expended a total (1) 1.50 hours to prepare the motion to compel and review the order setting the motion for oral arguments, (2) 1.70 hours to prepare the reply memorandum, and (3) 3.00 hours in traveling to court, preparing for the hearing, and orally arguing the motion before the undersigned magistrate judge. (R. Doc. 40-4, Ex. B.) Of the 3.00 hours he expended on the hearing, Peacocke specifies that he spent 2.60 hours in traveling to court and participating in oral arguments. (R. Doc. 40-4, Ex. B.)

After conducting a line-by-line analysis of Peacocke's billing invoice and reviewing Peacocke's activity on the record, the Court more closely scrutinizes the 2.60 hours he spent in traveling to court and attending the hearing. The record reflects that Peacocke's office is located on 3850 North Causeway Boulevard, Metairie, Louisiana, which is roughly a fifteen (15) minute drive to the Federal Courthouse. Therefore, at first blush, 2.60 hours may appear excessive. However, on the day of Peacocke's hearing, the Court considered seven (7) matters with oral argument, some of which were lengthy in duration. The first matter the Court heard lasted approximately an hour. The Court heard Peacocke's motion second, and the hearing lasted for approximately fifteen (15) minutes. Therefore, factoring in the commute time to and from Peacocke's office, the time needed to find parking near the Federal Courthouse, and the time for the hearing, the Court reasons that the 2.60 hours is reasonable.

As to the remaining entries, the Court concludes that the time that Peacocke reported was also reasonably expended. Even when considering Peacocke's 20 years of legal experience and the relative lack of difficulty of the motion, the Court finds that the 6.20 hours spent in preparing the motion is not excessive. Therefore, the Court awards Peacocke fees for a total of 6.20 hours, for his time spent on the above-mentioned motion, the associated parts, the reply memorandum, and oral argument on the motion.

    **2.**    **Reasonableness of Hours Expended by Giarrusso**

Similarly, Giarrusso attests that she spent 2.00 hours of working on Liberty Mutual's motion

to compel. Giarrusso submits itemized listings of the activities that she and her co-counsel, H. Minor Pipes, III ("Pipes"), performed in conjunction with the motion. While the billing invoice indicates Pipes performed 0.40 hours and Giarrusso performed 2.00 hours of work on the motion, Liberty Mutual only requests fees for work performed by Giarrusso. According to the billing invoice, Giarrusso spent (1) 0.70 hours contacting and conferring Teles with regard to his late discovery responses and (2) 1.30 hours drafting, revising, and filing the motion to compel and its associated supporting memorandum. (R. Doc. 47-3, Ex. B.) In examining Giarrusso's invoice and keeping in mind Giarrusso's qualifications and the lack of complexity of the motion, the Court concludes that Giarrusso's billed activities and time were reasonably expended. Therefore, the Court awards Giarrusso fees for a total of 2.00 hours in conjunction with her work on Liberty Mutual's unopposed motion to compel.

### C. Adjusting the Lodestar

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

Here, the Court has carefully considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure for either fee request. The Court has already considered the *Johnson* elements in its line-by-line determination of the lodestar.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Hallmark's **Motion to Fix Attorney's Fees (R. Doc. 40)** is **GRANTED**. The Court finds that the requested fee of **$837.00** is reasonable here.

**IT IS FURTHER ORDERED** that **Liberty Mutual's Motion to Fix Attorney Fees (R. Doc. 47)** is **GRANTED**. The Court finds that the requested fee of **$360.00** is reasonable.

**IT IS FURTHER ORDERED** that Teles pay both Hallmark and Liberty Mutual within **20 days** of the signing of this Order.

New Orleans, Louisiana, this <u>12th</u> day of February 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**